Argued and submitted September 11, 1989, reversed February 21, reconsideration denied May 16, petition for review denied June 5, 1990 (310 Or 121)

In the Matter of a Notice of
Deficiency Assessment of
North Pacific Supply Co., Inc.,
Dick Pendergrass, Controller.

NORTH PACIFIC SUPPLY CO., INC.,
*Petitioner,*

*v.*

EMPLOYMENT DIVISION,
*Respondent.*

(88-T-0155A; CA A50660)

787 P2d 495

Barrie J. Herbold, Portland, argued the cause for petitioner. With her on the brief was Markowitz, Herbold, Stafford & Glade, P.C., Portland.

Meg Reeves, Assistant Attorney General, Salem, argued

the cause for respondent. With her on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Before Joseph, Chief Judge, and Newman and Deits, Judges.

JOSEPH, C. J.

## JOSEPH, C. J.

Petitioner seeks review of a decision of an Employment Division referee that an employment relationship exists between it and salespeople employed by retail stores to which it distributes appliances, thus subjecting it to payroll taxes for unemployment insurance. ORS 657.030. We reverse.

The referee found:

"(1) The applicant is a wholesale distributor for RCA and Whirlpool appliances sold to retail outlets throughout the State of Oregon. (2) The individuals noted on the Consolidated Wage Credit Reports attached to the Deficiency Assessment and hereinafter identified as salespersons, are salespersons working in various retail outlets throughout Oregon. (3) The payments shown on the Consolidated Wage Credit Reports are 'spiffs'. 'Spiffs' are extra payments made to the salespersons who sell specific products which are supplied by the applicant. (4) Some of these salespersons either own or are involved in the ownership of the retail outlets. (5) These payments were not made because of their ownership of the stores, but because they certified that they sold the specific products. (6) Payments made directly to outlet businesses were excluded from the audit.

"(7) These payments are made only after negotiation between the applicant and the retail outlets, where the retailers agree to have their personnel involved in such programs. (8) These payments are made only on products already owned by the retail outlets. (9) These programs are entered into by the applicant to protect its share of the market place for the products it supplies. (10) Funds for these products are furnished either by the manufacturer paid to the applicant or by the applicant itself from a budgeted account. (11) The payments in question were made from the funds of the applicant directly to the specific salespersons.

"(12) The salespersons received these 'spiffs' only after certifying that they sold the specific products and that the sales took place during the time the particular program was in effect.

"(13) For these 'spiffs' to be received, the applicant requires certain forms to be filled out. These forms are then sent to the applicant who verifies that sufficient inventory was available to merit the amounts shown. (14) Occasionally, personnel from the applicant directly assist the salespersons in filling out the necessary forms.

"(15)  Some of the retail outlets note these 'spiffs' as being a source of income when hiring individuals and setting out what can be the basis for an individual's income by working at that particular store. (16) These 'spiffs' are accounted for by means of Form 1099's. (17) The applicant does not pay any withholding taxes on these payments. (18) The applicant has not been held liable by the IRS for any taxes on these payments."

Petitioner agrees that the referee's findings of fact are supported by substantial evidence but contends that the conclusion that the payments are subject to unemployment tax is legally wrong. *See Ponderosa Inn, Inc. v. Employment Div.*, 63 Or App 183, 185, 663 P2d 1291 (1983). ORS 183.482(8). It argues that the payments are not remuneration and that the sales of appliances made by the salespeople are not services to an employer constituting taxable employment. Division argues that the payments are taxable, because petitioner made them in exchange for services that benefitted it. The benefit, it argues, is that more of petitioner's products might be sold, which would protect its share of the appliance market. Division believes that, even though that benefit is indirect, it is "tangible and substantial."

■ ■   Only "services" performed for an "employer" for "remuneration" constitute "employment," and only "remuneration for employment" constitutes wages subject to the unemployment insurance law. ORS 657.015 - ORS 657.030; ORS 657.105. No employment exists, and no employment tax may be assessed, if the putative taxpayer is not an employer or if services are not performed for it. *Employment Division v. Shear Creations Salon,* 94 Or App 107, 109, 764 P2d 941 (1988). If services are performed for an employer for remuneration, the burden is on the employer to prove itself exempt. *Golden Shear Barber Shop v. Morgan,* 258 Or 105, 112, 481 P2d 624 (1971). "Service" is construed broadly. *Journal Publishing Co. v. St. Unemp. Comp. Com.,* 175 Or 627, 636, 155 P2d 570 (1945).

■   The referee concluded that the salespeople provide a service to petitioner, because the more appliances that they sell the more appliances retailers will purchase to replenish inventories, which in turn would increase petitioner's business. The referee also found that "spiffs" are remuneration for that service. We agree that the payments are remuneration and that petitioner's business is affected by the volume of

sales made by the salespeople. However, the "benefit" of that is indirect and wholly dependent on conditions beyond petitioner's direction and control. Owners of retail outlets, who are usually the direct employers of the salespeople,[1] benefit directly in this situation. They decide to participate or not in any given program; if they do participate, they maintain total control over how sales are made and how salespeople conduct the sales. Because petitioner has no control over how sales are made and at what prices or whether the spiff program will be implemented at a particular retail establishment, the service to the petitioner is too indirect to be intended by the act to constitute "employment."

Although one may be an employer for the purposes of the act, even though an individual's wages are paid by someone else, directly or indirectly, *Columbia Management Co. v. Morgan,* 270 Or 109, 119, 526 P2d 517 (1974) *(citing Lectro Lift, Inc. v. Morgan,* 14 Or App 316, 513 P2d 526 (1973)), it is noteworthy that the salespeople involved here can and do sell other brands of appliances. If petitioner were to go out of business, they would not lose their jobs or otherwise be directly affected. *See Columbia Management Co. v. Morgan, supra,* 270 Or at 119; *Kirkpatrick v. Peet,* 247 Or 204, 214, 428 P2d 405 (1967); *Journal Pub. Co. v. State Unemp. Comp. Com., supra,* 175 Or at 639. Division only listed as taxable the payments made out of petitioner's budgeted spiff account directly to the salespeople, rather than similar payments that were made to the retail business operators. We cannot see any legal reason why the payments challenged here should be taxable under the act while those other payments are not when, in fact, they are for the same purpose and are intended to produce the same effect. We hold that the referee erred.

Petitioner requests attorneys fees under ORS 183.497(1)(a) and (b). Petitioner initiated the proceeding, prevailed on the merits and is eligible for attorneys fees, *see White v. Employment Div.,* 77 Or App 35, 39, 711 P2d 196 (1985); *Hoard v. Employment Div.,* 82 Or App 718, 722, 729 P2d 593 (1986); ORS 183.497(1)(b), if Division had no

---

[1] Some of the salespeople are owners of interests in retail stores, but that fact does not affect the outcome here. Because of our holding, we need not address whether some of the salespeople are independent contractors or are otherwise exempt under ORS 657.040.

"reasonable basis in fact or in law" for its action. However, Division's action did not lack a reasonable basis in law or fact. Given the broad meaning of the controlling phrase "services performed for an employer" that is at issue in this case, reasonable minds could differ as to the scope of the law under the facts.

ORS 183.497(1)(a) grants us discretion to award petitioner attorney fees because we found in its favor. We decline to do so.

Reversed.