147 P.3d 322 (2006)
341 Or. 610
STATE of Oregon, Petitioner on Review,
v.
Clark Zane COUCH, Respondent on Review.
(CC MI010414; CA A119570; SC S52288).
Supreme Court of Oregon.
Argued and Submitted March 2, 2006.
Decided November 9, 2006.
Denise G. Fjordbeck, Assistant Attorney General, Salem, argued the cause and filed the briefs for petitioner on review. With her on the briefs were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.
Foster A. Glass, Bend, argued the cause for respondent on review. With him on the briefs was Mark L. Pollot.
Sarah Uhlemann, Rebecca G. Judd, and Jonathan Lovvorn, Washington D.C., filed a brief on behalf of amicus curiae The Humane Society of the United States.
Before DE MUNIZ, Chief Justice, and CARSON, GILLETTE, DURHAM, BALMER and KISTLER, Justices.[**]
DE MUNIZ, C.J.
In this case, the issues before the court are (1) whether nonindigenous, exotic deer, held in private ownership, can be considered "wildlife" as that term is defined in Oregon's fish and game statutes; and (2) if not, whether the Oregon Fish and Wildlife Commission (commission) nevertheless possesses the authority to regulate such animals.
The trial court sustained defendant's demurrer to the district attorney's information that charged defendant with more than 50 violations of administrative rules related to possessing or hunting certain kinds of nonindigenous deer in Oregon. The trial court reasoned that the deer at issue did not qualify as "wildlife" under the applicable statutes and that, as a result, the commission had exceeded its delegated authority in regulating them through its administrative rules. The Court of Appeals reversed, holding that, although the animals at issue indeed did not qualify as "wildlife," the trial court had erred in sustaining the demurrer on the basis of facts not alleged in the information. State v. Couch, 196 Or.App. 665, 103 P.3d 671 (2004). On review, we affirm the Court of Appeals decision, albeit for different reasons, reverse the trial court's judgment, and remand this case to the trial court for further proceedings.
In July 2001, the state filed a district attorney's information charging defendant with more than 50 misdemeanor violations involving rules promulgated under Oregon's wildlife laws.[1] The caption for each count contained in the information cited one or another of three state statutes as providing the bases for each of the charges: ORS 498.002 (1999), amended by Or. Laws 2003, ch. 656, § 10, ORS 498.022, and ORS 496.992, set out respectively. ORS 498.002(1) (1999) provided:
"Wildlife is the property of the state. No person shall angle for, hunt, trap or possess, or assist another in angling for, hunting, trapping or possessing any wildlife in violation of the wildlife laws or of any rule promulgated pursuant thereto."
ORS 498.022 provides, in part:
"Except as the State Fish and Wildlife Commission by rule may provide otherwise, no person shall purchase, sell or exchange, or offer to purchase, sell or exchange any wildlife, or any part thereof."
Finally, ORS 496.992(1) provides:
"Except as otherwise provided by ORS 153.022 and other law, violation of any *324 provision of the wildlife laws, or any rule promulgated pursuant thereto, is a Class A misdemeanor when the offense is committed with a culpable mental state as defined in ORS 161.085."[2]
With regard to the specific charges set out in the information, the state alleged that defendant had violated the following Department of Fish and Wildlife rules relating to the private holding, hunting, or propagation of cervids:[3] (1) selling certain cervid species without the required licenses or permits, OAR XXX-XXX-XXXX (2000); (2) possessing two particular cervid species without the required licenses, OAR XXX-XXX-XXXX (2000); and (3) unlawfully hunting, killing, or attempting to hunt or kill, exotic mammals or game mammals held by a private party, OAR XXX-XXX-XXXX (2000).[4] The misconduct underlying each count at issue in this case allegedly occurred in 2000 and involved either fallow deer, Axis deer, or Sika deer.[5] Fallow deer are a species indigenous to Europe and the Middle East, Axis deer are native to India, and Sika deer are native to Japan. All three species are cervids.
In his demurrer, defendant argued that, because the deer that were the subject of the state's allegations were captive and nonindigenous, they did not qualify as "wildlife" and therefore were beyond the scope of the commission's authority to regulate. In response, the state argued that the legislature intended the term "wildlife" to include both indigenous and nonindigenous species, whether captive and privately owned, or untamed and unrestrained.
The trial court sustained defendant's demurrer. It reasoned that
"wildlife [are] indigenous species that are running free or swimming free on the lands or the waters of this state. In contrast, game mammals being raised on a game farm within a confined setting and under the ownership of a property landowner, which are not indigenous and that are not running free on public and private lands in this state, are not wildlife per se."
Building on that foundation, the trial court ultimately concluded that
"[t]he regulations that have been passed by the Fish and Wildlife Commission are ultra vires acts that go beyond the delegation set forward by the Oregon State Legislature. These animals are not wildlife, but privately owned, exotic species of cervids, held for a substantial period of time."
The state appealed the order sustaining defendant's demurrer, and the Court of Appeals reversed. The Court of Appeals rejected the state's argument that, under the relevant statutes, "wildlife" included nonnative deer species held in captivity. The Court of Appeals examined the long history of the term's application in legal matters, as well as this court's previous decisions regarding "wildlife" regulation, and concluded that the statutory term "wildlife" referred to "animals ferae naturae[[6]] that have not previously *325 been subject to lawful capture." Couch, 196 Or.App. at 678, 103 P.3d 671. Nevertheless, the Court of Appeals determined that the trial court had erred in sustaining defendant's demurrer because the allegations contained in the information did not establish the "manner in which the deer were brought into this state and whether they have been held by defendant in lawful, private captivity." Id. at 679, 103 P.3d 671.
Although the state prevailed on appeal, it nonetheless petitioned for review in this court, arguing that, while the Court of Appeals had been correct in reversing the trial court's order below, the Court of Appeals nevertheless had erred in holding that, as used in the pertinent statutes, "wildlife" "refers to animals ferae naturae that have not previously been subject to lawful capture." Id. at 678, 103 P.3d 671. The state also argued that, even if the Court of Appeals' definition of "wildlife" were consistent with the legislature's intent, the commission's authority "to prevent serious depletion of any indigenous species and to provide the optimum recreational and aesthetic benefits for present and future generations of the citizens of this state" was not limited to animals that fell within the scope of that definition; rather, it included animals such as the deer identified in the state's charging information. We allowed the state's petition for review to determine (1) the intent behind the legislature's use of the term "wildlife" in the pertinent statutes; and (2) the effect of that definition on the commission's authority to regulate the animals and activities at issue here.[7]See generally State v. Snyder, 337 Or. 410, 415-20, 97 P.3d 1181 (2004) (notwithstanding fact that it prevailed on merits before Court of Appeals, state permitted to petition for Supreme Court review as to statutory interpretation issue, because state qualified as aggrieved party and controversy remained justiciable).
On review, the parties take different paths to arrive at their respective definitions of "wildlife." Defendant, for example, argues that the Court of Appeals properly interpreted that term as it is used in Oregon's wildlife laws. The Court of Appeals began its analysis with ancient Roman law and the writings of Justinian, then moved through history, drawing from the sixteenth-century judicial opinions of Lord Coke, the eighteenth-century writings of William Blackstone, and this court's early wildlife-related decisions. Relying on those resources, the Court of Appeals essentially defined "wildlife" as all animals existing, uncaptured, in a state of nature, and emphasized the congruency between the term and its definition by highlighting the term's use in statutes such as ORS 498.002:
"Thus, when ORS 498.002 declares that `[w]ildlife is the property of the state,' we may understand that the reference to `wildlife' fairly clearly is to animals ferae naturae over which the state has sovereignty, subject to the traditional qualification that the wildlife be `in a state of nature and at large,' and not previously subject to lawful capture. That always has been the extent of the state's authority to regulate `wildlife,' and nothing in the text or context of the statute suggests that the legislature intended to depart from that longstanding tradition."
Couch, 196 Or.App. at 677-78, 103 P.3d 671 (internal citation omitted). That is, the Court of Appeals relied on the ownership provision set out in ORS 498.002 to conclude that all animals existing, uncaptured, in a state of nature qualified as "wildlife."
The state, on the other hand, contends that we should give the term "wildlife" its dictionary definition: "living things that are neither human nor domesticated; esp: the mammals, birds, and fishes that are hunted by man for sport or food." Webster's Third New Int'l Dictionary 2616 (unabridged ed 2002). Under that definition, the state argues, "wildlife" clearly would include the deer species named in the challenged information. The state then emphasizes its own perception of congruency between the term and its proffered definition by asserting *326 that statutes such as ORS 498.052 would make little sense under a contrary reading:
"ORS 498.052 bars the release into the wild of `domestically raised wildlife.' If the Court of Appeals is correct that only free animals are wildlife, there can be no such thing as `domestically raised wildlife.' The statute makes sense only if it includes exotic and captive animals."
What both the state and the Court of Appeals have failed to fully embrace, however, is the fact that the legislature has expressly defined the term "wildlife" as it is used within the wildlife statutes. Consequently, we first must examine that definition. See, e.g., State v. Cox, 336 Or. 284, 289, 82 P.3d 619 (2003) (inquiry into former jeopardy claim first focused on legislature's definition of operative offense); SAIF v. Lewis, 335 Or. 92, 97, 58 P.3d 814 (2002) (where legislature statutorily had defined phrase at issue, court's analysis focused on statutory definition). The task before us is one of statutory construction; consequently, we employ the methodology set out in PGE v. Bureau of Labor and Industries, 317 Or. 606, 610-12, 859 P.2d 1143 (1993). Our goal is to discern the intent of the legislature by examining the statutory text in context. Id. at 610, 859 P.2d 1143.
The legislature's definition of "wildlife" is set out in ORS 496.004(19). It provides:
"As used in the wildlife laws, unless the context requires otherwise:
"* * * * *
"(19) `Wildlife' means fish, shellfish, wild birds, amphibians and reptiles, feral swine as defined by State Department of Agriculture rule and other wild mammals."
The text of that statute represents the starting point of our analysis. PGE, 317 Or. at 610, 859 P.2d 1143. It also represents the best evidence of the legislature's intent. Id.
As a threshold matter, we note that, unlike the definitions proposed by the Court of Appeals and the state, the statutory definition of the term "wildlife" does not set out general characteristics against which every animal can, regardless of species, be compared and appropriately categorized. In other words, the statutes do not declare that "wildlife" means any animal that retains its wild nature and remains at large, or is generally hunted for food or sport. Instead, the plain text of ORS 496.004(19) first demonstrates that not all animals need be "wild" to be defined as "wildlife" under the statute. Of all the animals listed in ORS 496.004(19), only two kinds must expressly be "wild" in order to fit within the definition: "wild birds" and "wild mammals" other than feral swine.
The wildlife laws do not define "wild." As a common word, however, we give the term its "plain, natural, and ordinary meaning." Id. at 611, 859 P.2d 1143. In this case, the most sensible meaning of "wild," given its use within the statute, is found in its primary dictionary definition: "[L]iving in a state of nature: inhabiting natural haunts (as the forest or open field): not tamed or domesticated[.]" Webster's at 2614. Consequently only birds and mammals living untamed or in a state of nature are considered "wildlife" under ORS 496.004(19). At the same time, however, that prerequisite is conspicuously absent with regard to the remaining animals listed in the statute. Unlike birds and mammals, neither fish, shellfish, amphibians, nor reptiles need be "wild" to qualify as "wildlife" under the definition. The result, from a textual perspective, is that, regardless of their situations in or out of nature, fish, shellfish, amphibians, and reptiles appear to be wildlife per se for the purposes of ORS 496.004(19).
Additionally, the current definition of "wildlife" in the Oregon statutes has developed in such a way that its history further demonstrates that the definition has notin the legislature's viewbeen a static concept. See Krieger v. Just, 319 Or. 328, 336, 876 P.2d 754 (1994) (context of a statute includes its prior versions). Prior to 1971, the word was undefined in Oregon's wildlife laws. In its stead, the legislature relied on its definitions for "game animals," ORS 496.006 (1969); "game bird," ORS 496.008 (1969); "game fish," 496.010; and "fur-bearing animals," ORS 498.095(9) (1969) to help give meaning to Oregon's fish and game laws. In 1971, however, the legislature created the *327 following definition and added it to those statutes:
"`[W]ildlife' means game fish, wild mammals except whales and porpoises, birds, amphibians and reptiles."
ORS 496.006(3) (1971). In 1989, the legislature amended that definition to provide, "`[w]ildlife' means fish, wild birds, amphibians, reptiles and wild mammals," ORS 496.004(15) (1989) before giving it its present form in 2001. If nothing else, those changes illustrate that, for at least the last 35 years, the meaning of "wildlife" in what is now ORS 496.004(19) has accommodated the exclusion or inclusion of different elements according to the legislature's determination of the state's policy needs.
That fact, together with the other observations noted above, lead us to conclude that the term "wildlife" means whatever the legislature says that it means. As this court noted in Enertrol Power Monitoring Corp. v. State of Oregon, 314 Or. 78, 84, 836 P.2d 123 (1992), regarding a similarly amorphous phrase:
"Given the `will-o'-the wisp character of the term "state agency," that term `means whatever the legislature says it means; its breadth or narrowness fluctuates according to the legislative definition.'"
The same holds true in this case. Here, the legislature has declared that, unless the context requires otherwise, "wildlife" means "fish, shellfish, wild birds, amphibians and reptiles, feral swine as defined by State Department of Agriculture rule and other wild mammals." We are obliged to apply the legislature's definition. As a result, some animalsbirds and mammalsindeed must be "wild" to be categorized as wildlife under the definition in ORS 496.002(19), while other animalsfish, shellfish, amphibians and reptilesneed not meet that requirement.
That fact is further borne out by the text of ORS 496.705. Subsection (1) of that statute provides:
"The State Fish and Wildlife Commission may institute suit for the recovery of damages for the unlawful taking or killing of any of the wildlife referred to in subsection (2) of this section that are the property of the state."
(Emphasis added.) The statute goes on to list a specific schedule of civil damages for unlawfully killing a variety of different animals. The point is this: If our construction of the term "wildlife" were not congruent with its statutory definition, there would have been no need for the legislature to specifically limit the reach of ORS 496.705 to "wildlife" that is the property of the state. But the legislature did exactly that and, in the process, underscored the fact that not all animals need be "wild" to qualify as "wildlife" under the statutory definition. Consequently, the Court of Appeals' contrary holding in that regard is incorrect. That said, however, the deer at issue in this case are, indeed, mammals and, in keeping with ORS 496.004(19), must therefore exist untamed and undomesticated in a state of nature if they are to fall within the ambit of any statute directed solely at the regulation of "wildlife."
It is important to note that whether the particular deer at issue here are "wild" or not is a question that has yet to be litigated at trial; consequently, we cannot speak dispositively to the status of those animals in that regard. Assuming, arguendo, that the deer in this case are not "wild," however, we must answer the question whether Oregon's wildlife laws nevertheless provide the commission with authority to regulate such animals.
The answer to that question is an unqualified "yes." Whether regulated as "wildlife" or not, deer clearly fall within the regulatory authority that the commission has been given over "game mammals."
"Game mammals," are defined in ORS 496.004(9) as:
"antelope, black bear, cougar, deer, elk, moose, mountain goat, mountain sheep and silver gray squirrel."
Unlike the animals listed in the statutory definition of "wildlife," the statutory definition of "game mammals" does not require any of the listed species to be wild, a designation that the legislature has demonstrated that it is clearly able to make when it wants to. Because deer are expressly included in the "game mammal" definition, it follows that *328 the commission's authority to regulate non-wild deer species exists in statutes that focus on game mammal regulation in Oregon. Under ORS 497.071(1), for example, funds derived from the sale of hunting and fishing permits are expressly earmarked "to provide adequate revenue to the State Fish and Wildlife Commission whereby game mammal herds and game fish populations may be increased for the benefit of Oregon hunters and anglers." (Emphasis added.) More to the point in this case, ORS 497.228 places strict controls on any person engaged in the business of propagating game mammals[8] for sale:
"(1) No person shall engage in the business of propagating game birds or game mammals for sale unless a wildlife propagation license is first obtained from the State Department of Fish and Wildlife.
"(2) The State Fish and Wildlife Commission may refuse to issue a license to an applicant if the commission finds that the conduct of the wildlife propagation business would tend to be harmful to existing wildlife populations.
"(3) The commission, by rule, may prescribe requirements for the care, inspection, transportation and the sale, taking or other disposition of the game birds or game mammals and for such record keeping and reporting procedures as will insure that the propagation activities are conducted in such manner as will not be harmful to existing wildlife populations."
Defendant, however, appears to assert that ORS 498.002with its declaration that "[w]ildlife is the property of the state"is more than simply an important source of commission authority. In defendant's view, it is apparently the only source. He argues that the commission's power therefore extends to only animals that are the property of the state, not to animals that are privately owned. We disagree, for several reasons.
First, defendant cites no authority for the proposition that ORS 498.002 is the only source of the commission's regulatory authority, and we know of none. Indeed, if nothing else, our discussion of game mammals demonstrates that the wildlife laws contain other sources of authority besides ORS 498.002 under which the legislature has authorized the commission to act. Second, defendant's argument is premised on the notion that "wildlife" can refer to only animals living untamed in a state of nature. As we have established, however, that premise cannot be squared with the plain text of the term's definition in ORS 496.004(19). Finally, it is incorrect to assumeas defendant implies in his argumentthat the state must own or have some possessory interest in a thing before it can be regulated.
Defendant also argues that the provisions of ORS 497.228, set out above, regulating game mammal propagation confer something other than a general regulatory authority on the commission. Specifically, defendant argues that ORS 497.228 is simply a recodification of former ORS 497.770 (1971), repealed by Or. Laws 1973, ch. 723, § 130, a statute that explicitly recognized that the degree of authority it imparted to the commission was limited. When former ORS 497.770 (1971) was in force, it required the commissionon receipt of a nominal five dollar feeto issue permits to virtually any interested individual allowing them to engage in the business of raising and selling any kind of game animal in Oregon. At the time, the statute made clear that its provisions were intended only
"to aid the game commission in the enforcement of the state game laws and not to place the game raisers under the jurisdiction of the game commission."
Former ORS 497.770(5) (1971). That statute, however, was not "recodified" as petitioner asserts; it was repealed in 1973. Or Laws 1973, ch 723, § 130. That same year, the legislature enacted ORS 497.228, and with it a regulatory scheme that was considerably more robust that its predecessor. Not only was the commission now authorized to deny propagation licenses when to do otherwise would harm existing wildlife populations, it also was empowered to create requirements for the care, inspection, transportation, and *329 ultimate disposition of game mammals. Those changes do not suggest that the legislature intended ORS 497.228[9] to be an extension of business as usual under former ORS 497.770 (1971); indeed the opposite is true, and defendant is mistaken when he argues otherwise.
We summarize our disposition of this case as follows. First, "wildlife" means what the legislature stated in ORS 496.004(19). The Court of Appeals erred in fashioning a definition for the term that deviated from the text of that statute. Second, the commission possesses the authority to regulate deer in Oregon either as "wildlife," ORS 496.004(19), or as a "game mammal," ORS 496.004(9). Finally, we note that defendant also challenges the sufficiency of the charging instrument based on federal constitutional law.[10] The nature of the rulings below, however, made it unnecessary for either the trial court or Court of Appeals to address those issues, and we decline to consider them now without a more fully developed record.
The decision of the Court of Appeals is affirmed. The judgment of the circuit court is reversed, and the case is remanded to the circuit court for further proceedings.
NOTES
[**] Riggs, J., retired September 30, 2006, and did not participate in the consideration or decision of this case. Walters, J., did not participate in the consideration or decision of this case.
[1] The phrase "wildlife laws" has a specific meaning under Oregon law. It is the short title for the statutes set forth in the Oregon Revised Statutes, chapters 496, 497, 498, and 501. See ORS 496.002 (so stating).
[2] We note that the captions for counts 48-50 in the information refer to "ORS 496.99." We assume that to be a scrivener's error, because no such statute exists. Such a mistake, however, does not invalidate those counts, because the charging part of the information adequately sets out the crime charged. See State v. Briggen, 112 Or. 681, 683, 231 P. 125 (1924) (to determine crime charged, court looked to charging part of indictment, not caption).
[3] OAR XXX-XXX-XXXX(12) (2000) defined "cervid" as "any member of the family cervidae (deer), including gametes or hybrids."
[4] OAR XXX-XXX-XXXX (2000) provided, in part: "It is prohibited to possess, purchase, sell, exchange or otherwise hold any cervid or part thereof in the state of Oregon unless specifically excepted" by rule.

OAR XXX-XXX-XXXX (2000) provided, in part: "It is unlawful to hunt, kill, or attempt to hunt or kill, exotic mammals * * * or game mammals * * * held or obtained by private parties[.]" However, OAR XXX-XXX-XXXX (2000) did allow such animals to be (1) slaughtered for meat or fur production; (2) euthanized as a result of health, safety, science, or valid husbandry concerns; and (3) hunted following an expressed authorization from the Wildlife Division Director.
[5] One additional count alleged that defendant unlawfully had possessed elk in violation of OAR XXX-XXX-XXXX. Because the trial court did not dismiss that count and the trial court's decision regarding that count has not been assigned as error on appeal, it is not relevant to our discussion.
[6] "Animals ferae naturae" means animals that retain their wild nature. Black's Law Dictionary 87 (6th ed. 1990).
[7] Neither the state nor the defendant claims error respecting the Court of Appeals decision regarding the legal sufficiency of the information.
[8] The term "propagate" is undefined in Oregon's wildlife laws. We note that that word ordinarily means both to "increase by natural reproduction" and to "foster the spread of" something. See Webster's at 1817 (so stating).
[9] Save for the fact that it no longer refers to "game fish," ORS 497.228 remains in force today in essentially the same form as it did when it was enacted in 1973.
[10] Specifically, defendant argues that the regulations at issue in this case both violate the Commerce Clause of the United States Constitution, Article I, section 8, clause 3, and have been preempted by existing federal laws and regulations.