Argued and submitted April 18, affirmed August 1,
petition for review allowed December 12, 2007 (343 Or 554)

NECANICUM INVESTMENT CO.,
*Petitioner,*

*v.*

EMPLOYMENT DEPARTMENT,
*Respondent.*

Employment Division - Tax Section
T70772; A131207

164 P3d 1197

Rolf C. Moan, Assistant Attorney General, argued the cause for respondent. With him on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Landau, Presiding Judge, and Schuman, Judge, and Simpson, Judge pro tempore.

SIMPSON, J. pro tempore.

## SIMPSON, J. pro tempore

At issue in this case is whether payments that a corporation makes to members of its board of directors for serving as board members constitute "wages" for "employment" that are subject to state unemployment taxes under ORS chapter 657. Petitioner paid $6,000 in such fees to each of its three board members, and the Oregon Employment Department (department) assessed petitioner payroll taxes on the payments. Petitioner sought review of that assessment before an administrative law judge (ALJ), arguing that director's fees were not "wages" for "employment" because corporate directors are not "employees" of a corporation. The ALJ concluded that, as the terms are defined in ORS chapter 657, such fees did constitute "wages" for "employment" that are subject to unemployment tax. Petitioner now seeks review of the ALJ's order. We agree with the ALJ's interpretation of the relevant statutes and therefore affirm.

We take the facts, which are undisputed, from the ALJ's findings. Petitioner is a property management firm incorporated in the State of Oregon and headquartered in Portland. It has been registered as an employer with the department since 1986. It is governed by a board of directors, which meets regularly and sets policy and provides governance and direction for the corporation. *See* ORS 60.301(1) (requiring all Oregon corporations to have a board of directors); ORS 60.301(2) (providing that, subject to certain limitations, "[a]ll corporate powers shall be exercised by or under the authority of, and the business and affairs of the corporation managed under the direction of, the board of directors"). In the third quarter of 2003, petitioner paid $6,000 in "director's fees" to each of three members of its board. It did not report those payments as part of its payroll and it did not pay unemployment taxes on them.

In 2005, the department's tax section conducted a routine random audit of petitioner and determined, in accordance with its tax manual,[1] that the $18,000 in director's fees

---

[1] The department's tax section maintains and uses a tax manual, which provides guidance to department employees on how to apply the tax laws. Before 2004, the manual held that director's fees are "generally nominal amounts to reimburse director's expenses for attending board meetings and would not be subject. Directors set policy; they do not manage the company." In mid-2004, that section was

constituted part of petitioner's 2003 taxable payroll. The department issued to petitioner a notice of tax assessment for approximately $700. Petitioner sought review of the assessment before an ALJ from the Office of Administrative Hearings. At the hearing, petitioner contended that the fees paid to its board of directors could not be "wages" for "employment" because directors, who control the corporation, were not employees. The ALJ determined that the director's fees met the statutory definitions of "wages" for "employment" and issued an order affirming the tax assessment.

Petitioner now seeks review of the ALJ's order, renewing its argument that the fees that it paid to directors cannot be subject to unemployment tax because its directors are not employees and, therefore, that the work of its directors is not "employment" that is subject to taxation. Petitioner argues that the role of corporate directors is to establish the overall course of a corporation's management direction, overseeing the corporation's business and approving major plans and actions—in short, that the board functions as the corporation's "alter ego" and is not "employed" by it. The department responds that, irrespective of the manner in which the words may be used in other contexts, the ALJ correctly concluded that director's fees are "wages" for "employment" as those terms are defined by the legislature in ORS chapter 657.

██ Because the issue in this case turns on the proper interpretation of "inexact" statutory terms, *see Springfield Education Assn. v. School Dist.*, 290 Or 217, 224, 621 P2d 547 (1980) (distinguishing inexact from exact or delegative terms and explaining that inexact terms are those "embodying complete expressions of legislative meaning, even though that meaning may not always be obvious"), we review the department's interpretation of the relevant statutes for consistency with legislative intent. ORS 183.482(8)(a); *Coast Security Mortgage Corp. v. Real Estate Agency*, 331 Or 348, 354, 15 P3d 29 (2000). We ascertain that intent by applying the interpretive principles of *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-12, 859 P2d 1143 (1993), examining the text

changed to read "director's fees are subject. Setting policy for a corporation is a service. When a director is paid for the service, the payment or fee is subject."

of the statute in context, and turning, if necessary, to legislative history and other aids to construction. *Coast Security Mortgage Corp.*, 331 Or at 354. Where the legislature has specifically defined terms in the statute itself, we construe those terms in accordance with the definitions supplied. *See State v. Couch*, 341 Or 610, 619, 147 P3d 322 (2006) (reviewing court is "obliged to apply the legislature's definition"); *City of Portland v. King*, 211 Or App 540, 543, 156 P3d 87 (2007) (same). In the absence of explicit definitions, we presume that the legislature intended that words be given their plain, natural, and ordinary meanings. *PGE*, 317 Or at 611. In all events, we may not refine the statute by adding words, exceptions, or qualifications that are not there. ORS 174.010; *Wheaton v. Kulongoski*, 209 Or App 355, 364, 147 P3d 1163 (2006).

■     Applying those principles to the present case, we begin by setting forth the statutes in ORS chapter 657 that, collectively, define the activities that are subject to unemployment taxation. Every Oregon employer must pay unemployment tax into the Unemployment Compensation Trust Fund, ORS 657.505. More specifically, under ORS 657.505(2), all employers must pay unemployment taxes "on all *wages* paid for services."[2] (Emphasis added.) "Wages," in turn, is defined in ORS 657.105 as meaning "all remuneration for *employment*"[3] (emphasis added), and "employment" is defined in ORS 657.030 as "service for an employer * * * performed for remuneration or under any contract of hire."[4]

---

[2] ORS 657.505 provides, in part:

"(1) On and after January 1, 1936, taxes shall be payable by each employer then subject to this chapter. Taxes shall become payable by any other employer on and after the date on which the employer becomes subject to this chapter.

"(2) An employer shall be liable for taxes on all wages paid for services performed on or after the first day of a calendar quarter."

[3] ORS 657.105 provides:

"(1) As used in this chapter, unless the context requires otherwise, and subject to ORS 657.115 to 657.140, 'wages' means all remuneration for employment, including the cash value, as determined by the Director of the Employment Department under the regulations of the director, of all remuneration paid in any medium other than cash.

"(2) Notwithstanding the provisions of subsection (1) of this section, non-cash remuneration paid for services performed in agricultural labor or domestic service shall not be considered remuneration or wages for any purpose under this chapter."

[4] ORS 657.030(1) provides:

■ Taken together, the effect of the statutory scheme is to create a broad class of services that constitute "employment," payment for which is subject to taxation under ORS chapter 657—namely, *any service for an employer that is performed for remuneration.* Other statutes in ORS chapter 657 then carve exceptions from that broad class, enumerating a wide, and somewhat eclectic, variety of services provided for an employer for remuneration that are nonetheless excluded from the definition of "employment." *See, e.g.,* ORS 657.043 (excluding golf caddying); ORS 657.048 (translation and interpretation); ORS 657.080 (newspaper delivery); ORS 657.047 (transportation of logs, poles, and piling); ORS 657.091 (food product demonstration). Also among the various services specifically excluded from the class of subject employment are services for an employer by individuals who would not ordinarily be regarded as "employees" of the employer, including: an independent contractor, ORS 657.040; services for a limited liability corporation by a member, ORS 657.044(1)(b); and services for a limited liability partnership by a partner, ORS 657.044(1)(c).[5] There is no exclusion in ORS chapter 657, however, for services provided for a corporation by members of its board of directors acting in their capacity as directors.

■■ The Supreme Court and this court have long held that the definition of "employment" for purposes of ORS chapter 657 is intended to be broadly inclusive, encompassing a relationship that is " 'broader than the scope of the employer-employee relation or that of master and servant as those terms are known to the common law.' " *Journal Pub. Co. v. State U. C. Com.*, 175 Or 627, 635, 155 P2d 570 (1945) (quoting *Rahoutis v. Unemployment Commission*, 171 Or 93, 113, 136 P2d 426 (1943)). Consistently with that understanding, the terms "service" for "remuneration" in ORS 657.030

---

"As used in this chapter, unless the context requires otherwise, and subject to ORS 657.035, 657.040 and 657.045 to 657.094, or any other section which excludes services from the term 'employment,' 'employment' means service for an employer, including service in interstate commerce, within or outside of the United States, performed for remuneration or under any contract of hire, written or oral, express or implied."

[5] There is also an exclusion, not applicable in this case, for services performed for a closely held, family run corporation by a corporate director who is also an officer if the corporation elects not to provide coverage. ORS 657.044(1)(a).

are broadly construed. *North Pacific Supply Co., Inc. v. Emp. Div.*, 100 Or App 553, 556, 787 P2d 495 (1990); *Petrol Stops Northwest v. Morgan*, 10 Or App 620, 625, 501 P2d 341 (1972). If services are performed for an employer for remuneration, the burden is on the employer to prove that it comes within an enumerated exception. *North Pacific Supply Co., Inc.*, 100 Or App at 556.

In light of the legislature's considered scheme and the case law interpreting it, we readily conclude that the director's fees paid by petitioner were unambiguously "wages" for "employment" as the legislature has defined those terms. It is undisputed that petitioner is an "employer" for purposes of ORS chapter 657. *See* ORS 657.025 (defining "employer").[6] The dispositive question, therefore, is whether the director's fees were "remuneration" for a "service" that the board provided to the corporation.

Neither "service" nor "remuneration" is defined in the statute, so we assume that the legislature intended them to have their ordinary meaning. *PGE*, 317 Or at 611. In ordinary parlance, a "service" is "an act done for the benefit or at the command of another," an act that "provide[s] information or other assistance," *Webster's Third New Int'l Dictionary* 2075 (unabridged ed 2002), and "remuneration" refers to "pay[ing] an equivalent to (a person) for a service, loss, or expense," *id.* at 1921. Petitioner's board of directors' role was to regularly meet to "set policy and provide governance and direction" for the corporation. By setting policy and providing governance and direction, the board certainly acted "for the benefit" of the corporation. *Cf.* William E. Knepper and Dan A. Bailey, *Liability of Corporate Officers and Directors* §§ 1-3, 6 (1993) (describing corporate board's responsibility to "oversee and monitor the operations of the business" and the board's fiduciary duty to promote the corporation's interest); Harry G. Henn, *Law of Corporations* § 207, 415 (1970)

---

[6] Under ORS 657.025, an "employer" refers to "any employing unit which employs one or more individuals in an employment subject to this chapter in each of 18 separate weeks during any calendar year, or in which its total payroll during any calendar quarter amounts to $225 or more." ORS 657.020(1)(a), in turn, defines "employing unit" as "[a]ny individual or type of organization * * * who has or had in its employ one or more individuals performing services for it within this state."

(same). Thus, petitioner's board of directors provided a "service" to petitioner, within the ordinary meaning of that word. In addition, petitioner paid $6,000 to each of the board members for acting in their capacity as board members—that is, for providing that service. The payments thus constituted "remuneration." In sum, petitioner's board of directors provided a "service" for an "employer" for which they were "remunerated." It follows that the services of the corporate directors acting in their capacity as board members are subject "employment" under ORS 657.030.

Other provisions of ORS chapter 657 support that conclusion. *See State v. Carr*, 319 Or 408, 411-12, 877 P2d 1192 (1994) (for purposes of *PGE* analysis, "[c]ontext includes other related statutes"). As we have noted, the statutes in ORS chapter 657 establish a broad definition of "employment," ORS 657.030, and then carve numerous explicit exceptions into that definition. Although the legislature carved several explicit exceptions into its definition of subject "employment," the services provided by corporate directors acting in their capacity as directors are not among them. The legislature, of course, is free to add such an exception; unless and until it does so, however, we are not at liberty to read into the statutes an exception that does not exist. ORS 174.010; *Wheaton*, 209 Or App at 364. Because the services of petitioner's corporate directors constitute "employment," it necessarily follows that the director's fees for those services were "wages" under ORS 657.105, and that those wages are taxable under ORS 657.505.

Petitioner's arguments to the contrary are not persuasive. As noted, petitioner contends that director's fees cannot possibly be "wages" for "employment" because that would cast corporate directors as employees when their role is, in fact, fundamentally different: they control the corporation and not *vice versa*. Petitioner argues, in other words, that the fiduciary relationship that a board of directors bears to the corporation it controls is not an "employment" relationship in any ordinary sense of the term. The difficulty with that argument is that it ignores the fact that the legislature took it upon itself, in ORS 657.030(1), to substantively define "employment," and, as we have concluded, it did so quite expansively. *See Journal Pub. Co.*, 175 Or at 636; *North Pacific Supply Co., Inc.*, 100 Or App at 556. Thus, it may be,

as petitioner asserts, that the legislature's broad definition of "employment," insofar as it encompasses the work of corporate directors acting in their capacity as directors, does not comport with the ordinary use of that word or with the manner in which the word is understood in other contexts.[7] We need not decide whether that is so, however; even assuming it is, it is irrelevant: The legislature is free to define "employment" in any way that it wants, and, in interpreting a statute, we are obliged to apply the definition that the legislature has supplied. *Couch*, 341 Or at 619 (a term in a statute means "whatever the legislature says that it means"). For purposes of assessing unemployment tax, the legislature has unambiguously defined "employment" in such a way as to encompass the services of petitioner's board of directors, and it has unambiguously defined "wages" in such a way as to encompass the fees that petitioner paid to its directors. The ALJ did not err in affirming the tax assessment.

Affirmed.

---

[7] As petitioner notes, the Federal Unemployment Tax Act includes in its definition of "employees" "any individual who, under the usual common law rules applicable in determining the employer-employee relationship, has the status of an employee," 26 USC § 3121(d), and federal treasury regulations have interpreted that to mean that corporate directors are *not* employees, 26 CFR 31.3121(d)-1(b) ("A director of a corporation in his capacity as such is not an employee of the corporation."). It is also worth noting that federal circuit courts construing other statutes and similarly applying traditional common-law principles have concluded that corporate directors acting in that capacity are not "employees." *See, e.g., Chavero v. Local 241*, 787 F2d 1154, 1156 (7th Cir 1986) ("members of boards of directors are not employees for purposes of Title VII coverage under any standards"); *Zimmerman v. North American Signal Co.*, 704 F2d 347, 351-52 (7th Cir 1983) (corporate directors are not employees for purposes of Age Discrimination in Employment Act); *see generally Clackamas Gastroenterology Associates, P. C. v. Wells*, 538 US 440, 448, 123 S Ct 1673, 155 L Ed 2d 615 (2003) (whether physicians who were directors of a clinic were employees for purposes of the American's with Disabilities Act depends on the existence *vel non* of factors indicating "master-servant" relationship).

Those statutes, and the decisions interpreting them, however, are beside the point here: Unlike the statutes at issue in those cases, which involved a common-law definition of "employment," in ORS chapter 657, the Oregon legislature has provided its own substantive definition of "employment" that the Supreme Court has expressly said is broader than the common-law employer-employee relationship. *Journal Pub. Co.*, 175 Or at 636; *see also Stephens v. Bohlman*, 314 Or 344, 350 n 6, 838 P2d 600 (1992) ("When this court interprets a statute, that interpretation becomes a part of the statute as if written into it at the time of its enactment."). Thus, we do not need to turn to common-law master-servant principles to determine the existence of an employment relationship; rather, we are obliged to apply the definitions that the legislature has provided. *Couch*, 341 Or at 619.