Argued and submitted July 10, affirmed October 31, 2007

# MT. BACHELOR SKI EDUCATION FOUNDATION,
## *Petitioner,*

*v.*

# EMPLOYMENT DEPARTMENT,
## *Respondent.*

## Employment Department
## 05TAX00093; A130360

170 P3d 1106

Jeff Eager argued the cause for petitioner. On the briefs were Julie L. Gregory and Balyeat & Gregory, LLP.

Paul L. Smith, Assistant Attorney General, argued the cause for respondent. With him on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Landau, Presiding Judge, and Schuman* and Ortega, Judges.

LANDAU, P. J.

---

* Schuman, J., *vice* Riggs, S. J.

## LANDAU, P. J.

Employer seeks review of a final order of an administrative law judge (ALJ) of the Office of Administrative Hearings concluding that a season ski pass that employer gave to an individual in return for assistance with its ski races constituted $910 in "wages" that are subject to unemployment taxation as assessed by the Employment Department. According to employer, the season pass does not constitute a "wage" within the meaning of the relevant statute, and, even if it does, there is insufficient evidence to support a finding that the value of the pass is $910. We affirm.

The relevant facts are not in dispute. Employer is a nonprofit organization that, among other things, provides sports training and conducts ski and snowboard races at Mt. Bachelor. Employer solicits assistance from "volunteers" who help conduct the races at Mt. Bachelor. The volunteers must be present on the ski slopes. To enable them to do that, employer offered—at no expense—full-season ski passes. Employer advertised for people to serve as volunteers and expressly promised that "[a] full alpine season pass will be given to those selected applicants" who meet employer's requirements. In November 2004, employer sent letters to potential volunteers that stated, in part, that it

"is hosting 22 days of ski racing for the 2004-2005 season. You must work all race days to earn a full season pass. * * * In other words, I will guarantee you lots of skiing if you will assure me that you will be there on time to work hard in helping us put on safe quality races."

Adult, full-season passes sold for $910 if purchased after October 31, 2004.

Judy Lear volunteered to provide ski racing services for 22 to 24 days of races during the 2004-05 season. She filled out an application, which stated, among other things, "I am aware I am NOT an employee[.]" On December 21, 2004, employer gave her a full-season ski pass at no charge. Employer required her to sign a "2004-200[5] Race Crew Member Commitment Form," in which she agreed to work the full number of days and comply with employer's policies. Among other things, those policies provide that, if a volunteer fails to work the required number of days, employer would revoke the season pass.

In May 2005, the department issued a notice of tax assessment finding that employer owed $32.78 in unpaid employment taxes for the fourth quarter of 2004. The notice was based on the finding that the season ski pass that employer provided Lear constituted $910 in "wages" within the meaning of the relevant statutes.

Employer sought review of the notice of tax assessment. ORS 657.683. At the hearing before the ALJ, employer contended that Lear was a "volunteer" and not an "employee" and that she was not paid any wages that are subject to taxation. According to employer, the season pass that it gave to Lear simply provided her access to the ski slopes to enable her to perform her volunteer services. In the alternative, employer argued that the $910 value that the department had assigned to the pass was too high. The ALJ rejected employer's contentions and affirmed the department's notice of assessment.

On review, employer argues that the ALJ erred in concluding that Lear was an "employee" who was paid "wages" that are subject to employment taxation. In the alternative, employer argues that the ALJ erred in finding that the value of the wages was $910.

The first of those arguments is one of statutory construction. Every Oregon employer must pay unemployment tax into the Unemployment Compensation Trust Fund "on all wages paid for services." ORS 657.505(2). The term "wages" is defined in ORS 657.105(1) as "all remuneration for employment, including the cash value, as determined by the Director of the Employment Department under the regulations of the director, of all remuneration paid in any medium other than cash." The term "employment" is defined as "service for an employer * * * performed for remuneration or under any contract of hire, written or oral, express or implied." ORS 657.030(1). And the term "employee" is defined as:

> "any person * * * employed for remuneration or under any contract of hire, written or oral, express or implied, by an employer subject to this chapter in an employment subject to this chapter. 'Employee' does not include a person who

> volunteers or donates services performed for no remuneration or without expectation or contemplation of remuneration as the adequate consideration for the services performed for a religious or charitable institution or a governmental entity."

ORS 657.015.

The issue in this case is whether employer's provision of the season ski pass to Lear was "wages," that is, whether the pass constituted "remuneration for employment" within the meaning of the relevant statutes. Because the statutory terms have been interpreted by an administrative agency, there is an initial question of whether the agency's interpretation is entitled to any particular weight. The answer to that question depends on the nature of the statutory terms at issue—specifically, whether they are exact, inexact, or delegative in nature. *See generally Springfield Education Assn. v. School Dist.*, 290 Or 217, 223, 621 P2d 547 (1980) (summarizing the categorization of statutory terms). In this case, because the relevant terms are inexact, *Necanicum Investment Co. v. Employment Dept.*, 214 Or App 385, 388, 389, 164 P3d 1197 (2007) ("wages," as used in ORS 657.505(2), and "remuneration," as used in ORS 657.105, are inexact terms), their meanings are determined as a matter of law, by reference to the rules of construction that ordinarily pertain to the interpretation of legislative enactments. *Coast Security Mortgage Corp. v. Real Estate Agency*, 331 Or 348, 354, 15 P3d 29 (2000).

Those rules of construction require us to determine the meaning of the statutes most likely intended by the legislature, looking first to the text of the statutes in context and, if necessary, to their enactment history and other aids to construction. *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-12, 859 P2d 1143 (1993). In examining the relevant statutes in context we begin by giving their terms the definitions that are expressly supplied by the legislature. *See State v. Couch*, 341 Or 610, 619, 147 P3d 322 (2006) (reviewing court is "obliged to apply the legislature's definition"); *City of Portland v. King*, 211 Or App 540, 543, 156 P3d 87, *rev den*, 343 Or 223 (2007) (same). In the absence of explicit definitions, we presume that the legislature intended that words of

common usage be given their plain, natural, and ordinary meanings. *PGE*, 317 Or at 611.

■ Turning to the statutory terms at issue in this case, it is clear that the season pass that employer gave to Lear constitutes "wages" within the meaning of ORS 657.105(1). To begin with, it is undisputed that employer is an "employer" within the meaning of the statutes. Consequently, whether the season pass constitutes "wages" that are subject to taxation turns on whether it is "remuneration" for "employment." "Remuneration" is not defined in the statute. In ordinary parlance, however, it refers to "an act of remunerating * * * something that remunerates : RECOMPENSE, PAY." *Webster's Third New Int'l Dictionary* 1921 (unabridged ed 2002). The verb "remunerate," in turn, means "to pay an equivalent for (as a service, loss, or expense) * * * to pay an equivalent to (a person) for a service, loss, or expense : RECOMPENSE, COMPENSATE." *Id.* Nothing in the wording of the statutes suggests that the legislature intended the term to be given anything other than that ordinary meaning. *Necanicum*, 214 Or App at 389-90. "Employment," as we have noted, is defined in the statute as "service * * * performed for remuneration." ORS 657.030(1).

In this case, employer's own statements demonstrate that the season pass given to Lear constitutes payment for services and are therefore "wages" for "employment" within the meaning of the statute. Lear was required to work all race days to "earn" her season pass. Had Lear failed to work all race days, her season pass would have been revoked.

Employer contends that the pass merely allowed access to the ski lifts necessary for Lear to perform the services. The pass given to Lear, however, allowed more than access to the lifts on race days; it allowed her access on *all* days during the entire ski season. In other words, in exchange for performing services for employer for 22 to 24 days, Lear received a pass that allowed her the unlimited ability to ski free of charge throughout the ski season.

Employer also insists that Lear herself acknowledged on her application form that she is not an employee, but rather a volunteer. Employer does not explain, however, how that phrase on a preprinted application form trumps the

facts that defined the actual relationship between it and Lear—that, as we have noted, Lear "earned" a full-season ski pass in exchange for providing services to employer on a limited number of race days.

■ At oral argument, employer also suggested that, even if Lear was otherwise an "employee" who received "wages" within the meaning of the statute, she qualifies for the "volunteer" exception that is contained in the statutory definition of the term "employee." According to employer, that exception provides that "employee" does not include a person who provides services with no expectation of remuneration "as the adequate consideration for the services performed" for, among other things, a charitable institution. ORS 657.015. Employer reasons that the season pass that it gave Lear could not be regarded as "adequate" consideration for her services, so we must conclude that she was a "volunteer," not an "employee." Even assuming for the sake of argument that the statute operates as employer suggests, however, the fact remains that employer offers no basis for the determination that the $910 season pass was not "adequate" as a matter of law.

■ We turn to employer's alternative argument, that the final order overvalues the season pass. The value of the pass is a question of fact. Accordingly, we review the challenged finding as to that fact for substantial evidence; that is to say, we will uphold the finding if the evidence in the record, as a whole, would permit a reasonable person to make the same finding. *See* ORS 183.482(8)(c) (defining "substantial evidence"). All evidence that a reasonably prudent person would rely on is admissible, unless it is irrelevant, immaterial, or unduly repetitious. ORS 183.450(1); *Cole / Dinsmore v. DMV*, 336 Or 565, 584, 87 P3d 1120 (2004).

In this case, the evidence is certainly adequate to support the finding that the value of Lear's season pass is $910. That amount was the advertised cost of a season pass purchased by a member of the public after October 31, 2004, and employer gave Lear the pass in December of that year.

Employer complains that the department ignored the fact that employer assigned a lesser value to those passes—$415—for tax-deduction purposes. Even assuming

the relevance of that evidence, however, employer's argument merely asks us to reweigh potentially conflicting evidence as to the value of the pass. That is not consistent with our standard of review. Employer does not explain why the evidence on which the department did rely—the published evidence of the sale price of the pass at the time that it was given to Lear—was not the sort of evidence that, considering the record as a whole, would permit a reasonable person to conclude that the value was $910. We reject employer's argument without further discussion.

Affirmed.